STATE of North Dakota, Plaintiff and Appellee,

v.

Michael Shane LEFTHAND, Defendant and Appellant.

Cr. No. 930362.

Supreme Court of North Dakota.

Oct. 27, 1994.

Leslie Deborah Johnson, Fargo, for defendant and appellant; argued by Alisha L. Ankers.

David D. Hagler, Asst. State's Atty., Fargo, for plaintiff and appellee.

SANDSTROM, Justice.

Michael Lefthand appeals from a judgment of conviction following a guilty verdict for class AA felony murder. He argues: (1) statements he made while jailed in Minnesota should have been excluded at trial, (2) hearsay testimony that a third party committed the murder should have been allowed, and (3) ineffective assistance of counsel. We affirm the judgment.

I

On November 12, 1985, Harlan Christensen was murdered in downtown Fargo. According to trial testimony, a group of men including the defendant, Michael Lefthand, accompanied Christensen to a liquor store on the night he was beaten to death. Charles Bush, Eugene Littlewind, and Kenneth Te-John testified they were at the scene and saw Lefthand murder Christensen.

In October 1990, prior to being charged in North Dakota, Lefthand was arrested in Minnesota for two murders in that state. On October 7, 1990, Lefthand received court-appointed counsel at his arraignment on the Minnesota charges. On October 24, Lefthand requested to speak with law enforcement officers about the North Dakota murder. Counsel was not notified. During interrogations involving the North Dakota case, Lefthand orally and in writing waived his *Miranda* rights. During questioning, officers gave Lefthand cigarettes, pop, and sweets. The officers testified this was done as common courtesy and to provide food if questioning extended over the dinner hour. On November 6, Lefthand signed a written confession that he killed Christensen. On November 17, Lefthand requested to speak to officers, and during that meeting, recanted his confession.

The State charged Lefthand with Christensen's murder on November 28. After the

jury found Lefthand guilty, a judgment of conviction was entered for murder.

The trial court had jurisdiction under Art. VI, § 8, N.D. Const., and N.D.C.C. § 27–05–06(1). This Court has jurisdiction under Art. VI, § 6, N.D. Const., and N.D.C.C. § 29–28–06(2). The appeal is timely under Rule 4(b), N.D.R.App.P.

## II

### A

■ Lefthand argues statements he made while jailed in Minnesota on separate charges were incorrectly admitted. The trial court denied Lefthand's motion to suppress, finding no violation of his constitutional rights. A trial court's conclusions of law are fully reviewable by this Court. *City of Mandan v. Jewett,* 517 N.W.2d 640, 641 (N.D. 1994). A trial court's findings of fact on a motion to suppress will not be reversed if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. *State v. Murray,* 510 N.W.2d 107, 109 (N.D.1994).

■ The Fifth Amendment to the United States Constitution provides the privilege against self-incrimination. The United States Supreme Court has recognized a number of protective rights, including the right to have counsel present, to counteract the inherent pressures of custodial interrogation. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Once having asserted the right to counsel for interrogation, the accused may not be reapproached regarding *any* offense unless counsel is present. *McNeil v. Wisconsin,* 501 U.S. 171, 177, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158, 168 (1991). Thus, the Fifth Amendment protections are not "offense-specific." *McNeil.* The Sixth Amendment recognizes the defendant's right to assistance of counsel in all criminal prosecutions. Unlike the Fifth Amendment right, however, the Sixth Amendment right is offense-specific. "It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *McNeil,* 501 U.S. at 175, 111 S.Ct. at 2207, 115 L.Ed.2d at 166–67 (quoting *United States v. Gouveia,* 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146, 154 (1984)).

■ Lefthand claims the appointment of counsel at his arraignment on Minnesota charges invoked his Fifth Amendment right to counsel, which could not be waived in subsequent interrogation. Once the right attached, he says, he could not be approached about the North Dakota case. Lefthand misconstrues the distinction between the Fifth and Sixth Amendments. The invoking of his Sixth Amendment right to counsel, as a matter of fact, did not invoke his Fifth Amendment right. *McNeil,* 501 U.S. at 178, 111 S.Ct. at 2209, 115 L.Ed.2d at 168. "To find that the defendant invoked his Fifth Amendment right to counsel on the present charges merely by requesting the appointment of counsel at his arraignment on the unrelated charge is to disregard the ordinary meaning of that request." *McNeil,* 501 U.S. at 178–79, 111 S.Ct. at 2209, 115 L.Ed.2d at 169. Further, Lefthand explicitly waived his *Miranda* rights at each questioning on the North Dakota case, the first opportunity he had to invoke them.

Lefthand argues appointment of counsel for him at the arraignment, barred subsequent contact by the police.

■ The appointment of counsel on the Minnesota charges does not invoke Lefthand's Sixth Amendment right to counsel for the North Dakota murder. Because the Sixth Amendment right is "offense-specific," it attached for those matters which Lefthand was charged in Minnesota. At the time of questioning on the North Dakota murder, Lefthand had not been charged with the death of Christensen. The Sixth Amendment, therefore, posed no bar to the admission of statements in this case. *See McNeil,* 501 U.S. at 176, 111 S.Ct. at 2208, 115 L.Ed.2d at 167.

Relying on *Michigan v. Harvey*, 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990), Lefthand next argues the statements, even if admissible, should not have been introduced as substantive evidence. The question in *Harvey* was whether the prosecution could still use a statement, taken in violation of the defendant's Sixth Amendment right to counsel, to impeach his false testimony. *Harvey*, 494 U.S. at 345–46, 110 S.Ct. at 1177–78, 108 L.Ed.2d at 299. The Court held it may. *Harvey*, 494 U.S. at 346, 110 S.Ct. at 1178, 108 L.Ed.2d at 299. Nothing in that case limited the use of statements validly obtained, as in this case, as substantive evidence. On the contrary, even statements illegally obtained could be introduced, though only to impeach. *Harvey*, 494 U.S. at 351, 110 S.Ct. at 1180–81, 108 L.Ed.2d at 302–03.

### B

■ Lefthand contends his admissions were coerced and should not have been admitted. The trial court found the statements were voluntarily given. "Because voluntariness of a confession depends upon questions of fact to be resolved by the trial court, and because the trial court is in a superior position to judge credibility and weight, we show great deference to the trial court's determination of voluntariness." *State v. Taillon*, 470 N.W.2d 226, 228 (N.D.1991). We will reverse the decision only if it is contrary to the manifest weight of the evidence. *Taillon*.

■ The voluntariness of a confession is found using the totality-of-the-circumstances test. *Taillon*. "The inquiry focuses on two elements: (1) the characteristics and condition of the accused at the time of the confession and (2) the details of the setting in which the confession was obtained. No one factor is determinative." *Taillon* (citations omitted). The first element, the characteristics and condition of the accused, includes the age, sex, race, education level, physical or mental condition, and prior experience with police. *State v. Pickar*, 453 N.W.2d 783, 785 (N.D.1990). Lefthand has been active in his defense, and at oral argument his lawyer conceded he is "not a stupid individual by any means." Lefthand did not present evidence he was physically or mentally unable to deal with police interrogation.

■ The second element of voluntariness includes the duration and conditions of detention, police attitude toward the defendant, and the diverse pressures that sap the accused's powers of resistance or self-control. *Taillon* at 229. The trial court did not find Lefthand's Minnesota detention, for less than one month prior to questioning on Christensen's murder, coercive. Lefthand also argues law enforcement officials coerced him into confessing by providing cigarettes, pop, and sugary treats while questioning him. Lefthand does not argue he was not provided three meals a day. In fact, officials testified the snacks were given in case the questioning extended over the dinner hour. Lefthand's novel theory is not persuasive. The trial court's finding of voluntariness is supported by the evidence.

### III

■ The trial court denied testimony tendered on Lefthand's behalf. Lefthand's private detective was to testify on statements Charles Bush allegedly made to a third party concerning Christensen's murder. According to the private detective, in the offer of proof, Bush told the third party that he was the person responsible for Christensen's death. The third party allegedly related these statements to the private detective. The State objected to the testimony as inadmissible hearsay. The trial court denied the private detective's testimony, holding the statements could not be introduced as impeachment evidence against Bush. Lefthand claims the testimony should have been admitted. The evidence is a classic example of hearsay within hearsay. Under Rule 805, N.D.R.Ev., hearsay is not excluded if each part of the combined statements (Bush to the third party, the third party to the private detective) conforms with an exception to the hearsay rule. The alleged statements by Bush to the third party were potentially against Bush's criminal interest, so this hearsay is analyzed under Rule 804(b)(3), N.D.R.Ev. Rule 804(b)(3) has three requirements: (1) the declarant must be unavailable to testify at trial, (2) the statement, at the

time of its making, must subject the declarant to criminal liability such that a reasonable person would not have made the statement without believing it to be true, and (3) a statement tending to expose the declarant to criminal liability and offering to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. Rule 804(b)(3), N.D.R.Ev., *see United States v. Seabolt*, 958 F.2d 231, 233 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1411, 122 L.Ed.2d 782 (1993).

 The first requirement of the rule is not met because the out-of-court declarant, Charles Bush, appeared at trial and testified. It is also questionable whether the second requirement of Rule 804(b)(3) was met. In *Seabolt,* the declarant told a third person he committed the crime which the defendant had been charged. The court held the declaration between prison inmates was more apt to be "jailhouse braggadocio" than a statement against criminal interest. *Seabolt,* 958 F.2d at 233. The statement in this case was not between prison inmates, however, the context is similar. The private detective testified the statement was made at the third party's residence and Bush "had been sniffing paint and gasoline and been drinking some alcohol and was bragging about killing the guy in Fargo." Finally, there were no corroborating circumstances of trustworthiness set forth by Lefthand. The questionableness of the last two requirements, coupled with the undisputed availability of Bush for trial, clearly support the trial court's exclusion of Bush's statements.

 Relying upon *United States v. Lenfesty,* 923 F.2d 1293 (8th Cir.1991), *cert. denied sub nom. Smith v. United States,* 499 U.S. 968, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991), Lefthand argues the private detective's testimony should have been admitted because it involved statements of co-conspirators under Rule 801(d)(2)(v), N.D.R.Ev. The rule allows statements by a co-conspirator of a party, during the course and in furtherance of the conspiracy, to be offered against the party as an admission. Bush's statement does not fall under this exclusion. First, there has been no conspiracy alleged.

Second, even if a conspiracy to kill Christensen had been alleged, the statement, made much later, was not in its furtherance. Because Bush's statements to the third party are inadmissible, the statements by the third party to the private detective do not need to be addressed.

 Finally, we note the substance of hearsay evidence was not entirely excluded from trial. When no exception or exclusion applies, hearsay may not be used as substantive evidence, but only to impeach under Rule 613, N.D.R.Ev. *State v. Allery,* 322 N.W.2d 228, 232 (N.D.1982). Bush was questioned extensively, without objection, on the alleged prior statement to the third party. This questioning was the proper method to introduce otherwise inadmissible hearsay.

## IV

 Lefthand contends his court-appointed counsel did not adequately represent his interests at trial. When a claim for ineffective assistance of counsel is argued on direct appeal, we review the entire record. "If we cannot readily determine that assistance of counsel was plainly defective and there exist no other grounds for reversal, then the defendant can later pursue his claim at a postconviction proceeding where an adequate record can be developed." *Hoffarth v. State,* 515 N.W.2d 146, 150 (N.D.1994).

 There are two considerations in an ineffective assistance of counsel claim. First, Lefthand must show his trial lawyer's representation fell below an objective standard of reasonableness. Second, the defective representation prejudiced him. *Hoffarth* at 150. The heavy presumption is that counsel's conduct fell within the range of reasonableness, and we will not second guess defense strategy through hindsight. *State v. Norman,* 507 N.W.2d 522, 525 (N.D.1993). The first consideration requires the defendant to show trial counsel made errors so serious as not to function as the "counsel" guaranteed by the Sixth Amendment. *State v. Sayler,* 443 N.W.2d 915, 918 (N.D.1989). Lefthand argues the failure to suppress his custodial statements or certify the question of their admissibility prior to trial; the fail-

ure to introduce the testimony of the private investigator to the jury; the failure to subpoena the out-of-court declarants; and, the failure of trial counsel to inform him of the risks and alternatives in this case indicate his representation fell below the accepted standard.

We have already addressed the failure to suppress Lefthand's custodial statements and to introduce the hearsay testimony. Those arguments fail. Lefthand's next contention, certification of admissibility of his custodial statements, also fails. This State has no method for certification of factual issues for appellate review prior to a criminal trial. *See* N.D.C.C. § 29-28-06. Further, it was not necessary to subpoena the out-of-court declarant, Bush, because he testified and was cross-examined extensively on the alleged hearsay statements sought to be introduced through the private detective. Finally, Lefthand makes the conclusory allegation trial counsel failed to educate and inform him of the risks and alternatives of the case. "A challenge premised on incompetent counsel requires the challenger to point out with specificity or particularity how and where the trial counsel was incompetent and *the probable different result.* In absence of any such showing, we are compelled to reject the contention that trial counsel acted incompetently." *State v. Wolf,* 347 N.W.2d 573, 576 (N.D.1984) (emphasis in original). We cannot say, from this record, the assistance of counsel was plainly defective.

### V

The judgment of conviction is affirmed.

VANDE WALLE, C.J., and NEWMANN and MESCHKE, JJ., concur.

LEVINE, Justice, specially concurring.

This case is one that is based purely on federal law. No issue was raised that our State Constitution precludes admission of Lefthand's confession because it affords greater protection than the Federal Constitution, given the special importance of the right to counsel in North Dakota. *See, e.g., State v. Orr,* 375 N.W.2d 171 (N.D.1985).

I agree that under the Federal Constitution, the Sixth Amendment right to counsel has been interpreted to be "offense specific." I therefore concur in the opinion.